# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RUSH UNIVERSITY MEDICAL CENTER, | ) ) ) | |
| Plaintiff, | ) ) | No. 04 C 6878 |
| v. | ) ) ) | Wayne R. Andersen District Judge |
| MINNESOTA MINING AND MANUFACTURING COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant Minnesota Mining and Manufacturing Company's motion for partial summary judgment filed pursuant to Federal Rule of Civil Procedure 56. The defendant's motion encompasses plaintiff's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, as well as plaintiff's claim for non-contractual damages. For the following reasons, the defendant's motion is granted in part and denied in part.

## BACKGROUND

In spring, 1995, plaintiff Rush University Medical Center ("Rush") and defendant Minnesota Mining and Manufacturing Company ("3M") began discussions regarding Rush's interest in 3M's Care Innovation system, an integrated clinical information system designed to give medical providers improved electronic access to patient records. On December 24, 1998,

after nearly three years of negotiations, the parties signed a contract for Rush to license Care Innovation. The system went "live" at Rush by the fall of 1999.

The parties' contract required 3M's Care Innovation system to link Rush's different computerized clinical and administrative systems into a single, integrated patient data system—a "clinical data repository" ("CDR")—from which Rush's physicians, nurses, and others could obtain information on patients' medical histories and treatments. The contract also required 3M to provide a Care Innovation system with certain "functionalities" that would enable Rush's physicians, nurses, researchers, and administrators to interact with the clinical information in the CDR and provide "workflow" solutions to accommodate the way in which patient care was delivered at Rush. During the negotiations leading up to the parties' agreement, 3M made certain representations to Rush that caused Rush to believe that 3M had the capabilities to provide all of Rush's requested functionalities.

In its complaint, Rush alleges that the Care Innovation system that 3M provided to Rush lacked some or most of the functionalities that 3M had contractually agreed to provide. Specifically, Rush asserts that 3M provided merely a "read-only," non-interactive repository of clinical results of Rush's patients, rather than the interactive system required in the parties' contract. On September 27, 2001, Rush sent a letter to 3M both praising Care Innovation's ease of use in delivering clinical information to Rush's clinicians and also raising specific issues with the system regarding the missing or inactive functionalities that 3M had promised to provide. On October 11, 2001, 3M sent a letter to Rush in which 3M assured Rush that 3M was committed to the development and long-term growth of its Care Innovation system. Rush contends that it relied on those representations and continued to believe that 3M would provide the key functionalities that 3M had promised to provide.

On February 21, 2002, 3M sent Rush and all of 3M's other Care Innovation customers a letter (the "sunset letter") in which 3M made clear that it was no longer committed to developing certain components of Care Innovation. According to Rush, these components included certain functionalities that 3M had contracted to provide to Rush. As a result, Rush signed an agreement with another vendor to provide Rush with a system that would include the functionalities that 3M allegedly failed to provide. That new system is scheduled to go "live" at Rush by March, 2008. Meanwhile, Rush has continued to use 3M's Care Innovation system.

On October 26, 2004, Rush filed this lawsuit against 3M asserting claims for breach of contract, breach of warranty, and statutory fraud under the Consumer Fraud Act. Rush has requested at least $31 million in damages, which includes Rush's alleged $9.5 million cost to replace Care Innovation as well as $22 million in "cost savings" that Rush claims 3M promised but that Rush did not realize. 3M now asks this court to grant summary judgment on Rush's claim under the Consumer Fraud Act on the grounds that (1) the claim is barred by the Consumer Fraud Act's three-year statute of limitations; (2) the claim is entirely based upon language contained in the parties' contract; (3) Rush has not shown the requisite "consumer protection concerns" for a claim under the Consumer Fraud Act; and (4) according to 3M, there is no evidence that 3M made any fraudulent statements to Rush concerning Care Innovation. 3M also seeks partial summary judgment on Rush's demand for damages in excess of the damages limitation provision contained in the parties' contract.

## DISCUSSION

*A. Standard of Review*

Summary judgment is proper only when the complete record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

3

FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating the absence of evidence to support the position of the nonmoving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The burden then shifts to the nonmoving party to establish that there are genuine issues of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court must draw every reasonable inference from the record in the light most favorable to the nonmoving party and should not make credibility determinations or weigh evidence. *Ass'n Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir. 1994). The nonmoving party must support its assertions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Celotex*, 477 U.S. at 324. Additionally, Rule 56(c) mandates summary judgment when the nonmoving party fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

B. *The Consumer Fraud Act's Statute of Limitations*

3M argues that it is entitled to summary judgment on Rush's claim under the Consumer Fraud Act because that claim is barred by applicable statute of limitations. A claim under the Consumer Fraud Act is "forever barred unless commenced within 3 years after the cause of action accrued." 815 ILCS 505/10a(e). A claim accrues under the Consumer Fraud Act when a person "knows or reasonably should know of his injury and also knows or reasonably should

know that it was wrongfully caused." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994). Rush filed the instant lawsuit, including its claim under the Consumer Fraud Act in count III, on October 26, 2004. Thus, Rush's claim in count III is barred if Rush knew or reasonably should have known prior to October 26, 2001 of its claims against 3M under the Consumer Fraud Act.

3M argues that because the parties' negotiations occurred between 1995 and 1998, and because 3M provided its Care Innovation system to Rush at the end of 1998, Rush knew or should have known whether 3M's representations about the product's capabilities were true nearly six years before the suit was filed. 3M further asserts that even if the "go live" date—late 1999 or early 2000—is viewed as the accrual date for Rush's claim under the Consumer Fraud Act, then Rush should have known whether 3M had the existing capabilities to deliver on its promises between four and five years before the lawsuit was filed. Additionally, on September 27, 2001, more than three years before the lawsuit was filed, Rush sent a letter to 3M in which Rush raised the precise issues that later became the basis for this suit. 3M argues that this letter provides clear evidence that Rush had knowledge more than three years before the lawsuit was filed as to whether Care Innovation had the capabilities promised in the parties' contract. Rush contends that it did not know and should not have known of 3M's alleged misrepresentations regarding Care Innovation's capabilities until 3M sent the sunset letter on February 21, 2002.

We find that Rush's claim in count III is barred by the Consumer Fraud Act's three-year statute of limitations because, at the very latest, Rush knew or reasonably should have known of 3M's alleged misrepresentations by September 27, 2001—the date that Rush sent its letter to 3M raising the precise issues that formed the basis for Rush's claim under the Consumer Fraud Act. Rush was well aware or should have been well aware at the "go live" date in the fall of 1999 that

the Care Innovation system provided to it by 3M did not have the capabilities required by the parties' contract. By September, 2001, after it had used that Care Innovation system for nearly two years, Rush had all the information it needed to draw the conclusion that 3M had misrepresented its capabilities with regards to Care Innovation's functionalities. That 3M did not send its sunset letter until February, 2002 does not change the fact that 3M's system had been operational at Rush for nearly two years, during which time Rush, a sophisticated commercial entity, should have known of the alleged inadequacies of that system and should have filed its claim under the Consumer Fraud Act if Rush wanted to preserve that claim. Rush failed to do so, however, and that claim is now forever barred under Consumer Fraud Act's three-year statute of limitations. Because we find that Rush's claim under the Consumer Fraud Act is barred by the applicable statute of limitations, we need not address 3M's other arguments with respect to that claim. Accordingly, 3M's motion for summary judgment on count III is granted.

C. *Non-Contractual Damages*

3M argues that Rush should not be permitted to seek damages outside of the limitations contained within the parties' contract. The contract provides that:

> NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, EXEMPLARY, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF A BREACH OF THIS AGREEMENT. EACH PARTY'S TOTAL LIABILITY FOR DIRECT DAMAGES ARISING UNDER THIS AGREEMENT SHALL BE LIMITED TO THE GREATER OF: (i) TWO (2) TIMES THE SYSTEM PURCHASE PRICE ACTUALLY PAID BY [RUSH] HEREUNDER, OR (ii) THE EXTENT SUCH DAMAGES ARE COVERED BY SUCH PARTY'S INSURANCE.

Pursuant to the contract, the above limitation does not apply to damages arising out of or relating to either party's gross negligence or willful misconduct.

3M argues that, in accordance with the plain language of the parties' contract, it should be granted summary judgment on (1) Rush's demands for indirect, exemplary, special, and consequential damages, including 3M's $22 million demand for "lost cost savings," and (2) Rush's demand for direct damages in excess of the overall contractual limitation of two times the purchase price actually paid by Rush for Care Innovation. In response, Rush argues (1) that the contractual damages limitation does not apply to damages arising from non-contractual violations, including violations of the Consumer Fraud Act, (2) that 3M's motion for partial summary judgment with regards to damages violates the Federal Rules of Civil Procedure and Seventh Circuit precedent because an order that limits the damages available under a claim does not dispose of the entire claim, and (3) that the contractual damages limitation should not apply because 3M acted with gross negligence or willful misconduct.

We decline to limit Rush's potential damages at the summary judgment stage. Because we have already determined that Rush's claim under the Consumer Fraud Act fails as a matter of law, Rush's argument that the contractual damages limitation does not apply to damages arising from a violation of that Act also fails. However, we find that a genuine issue of material fact exists as to whether 3M acted with "gross negligence or willful misconduct." Illinois law defines "gross negligence" and "willful misconduct" as "recklessness," which means a conscious and deliberate disregard for the rights or safety of others. *Resolution Trust Corp. v. Franz*, 909 F. Supp. 1128, 1141 (N.D. Ill. 1995). Here, Rush contends that, from the beginning of the parties' negotiations, 3M acted with conscious and deliberate disregard for Rush's rights when 3M allegedly made statements about Care Innovation's capabilities that were false and misleading. Rush further claims

7

that 3M continued to act with gross negligence or willful misconduct when it made post-contractual statements about 3M's commitment to Care Innovation that were also false and misleading.  We are unwilling, at the summary judgment stage, to conclude as a matter of law that 3M did not act with gross negligence or willful misconduct when it made representations to Rush about either Care Innovation's capabilities or 3M's commitment to Care Innovation.  Rather, we will permit Rush to present evidence at trial with regards to 3M's alleged gross negligence or willful misconduct and, if 3M moves to strike Rush's claim for non-contractual damages after Rush rests its case, then we will address that motion at that time in light of the evidence presented by Rush.

Because we find that a genuine controversy exists as to whether 3M acted with gross negligence or willful misconduct, we refuse to limit Rush's potential damages at this time.  Accordingly, 3M's motion for partial summary judgment with regards to damages is denied.

## **CONCLUSION**

For the foregoing reasons, defendant 3M's motion for partial summary judgment [57] is granted in part and denied in part.  3M's motion for summary judgment on count III is granted.  3M's motion for partial summary judgment with regards to damages is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated:____November 21, 2007_____